Vernon C. WALTERS, et al., Plaintiffs,

v.

Eric LINHOF, et al., Defendants.

Civ. A. No. 82–K–1801.

United States District Court,
D. Colorado.

March 17, 1983.

 

Alan N. Jensen, Colorado Springs, Colo., Martin M. Ostrow, Los Angeles, Cal., for plaintiffs.

Robert A. Dufty, Dufty & Schoenwald, Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER GRANTING PARTIAL SUMMARY JUDGMENT

KANĖ, District Judge.

Plaintiffs' complaint asserts four claims of alleged defamation by defendants when plaintiffs were seeking recommendations and approvals from agencies of El Paso County, Colorado, and from the El Paso Board of County Commissioners for a construction project near Monument, Colorado. These approvals included rezoning requests. The allegedly defamatory statements were contained in letters by various defendants to the land use department, county officials and to the editor of the Monument *Tribune* newspaper. Citizenship of the parties is diverse. The amount in controversy exceeds $10,000. Subject matter jurisdiction vests under Title 28 U.S.C. § 1332.

The first claim asserts that on November 9, 1981, defendant Linhof sent a letter to the El Paso County Land Use Department that referred to plaintiff Walters as "a land option speculator posing as a developer." The second claim also arises from a letter to the land use department, by defendant Haymond in which he said in referring to plaintiffs, ". . . we have reason to urge that the County Commissioners examine thoroughly the financial capability and technical knowledge of this developer. . . ." The third claim arises from a letter to the editor of the Monument *Tribune* published January 7, 1982, in which defendant Woodruff, referring to plaintiffs, said "I was shocked to learn that many of the California towns where Walters claimed to have experience were very familiar to me. My thoughts wandered to over-built and crowded subdivisions, rundown and vacant shopping centers, and industrial complexes which are real eye-sores." The fourth and final claim charges that defendants Linhof, Haymond, Rosenow and Roeming "on several occasions in November, 1981, presented to various public officials in El Paso County, Colorado, a letter from one Robert Cruse[1] that contained statements about the Plaintiffs which were untrue, with a photograph of the Plaintiffs' headquarters in California." The exact nature of the statements in this letter or whether the photograph was in fact a photograph of plaintiffs' headquarters is not articulated.

Defendants have asserted six counterclaims for abuse of process, outrageous conduct, negligent misrepresentation, fraudulent misrepresentation, civil conspiracy and frivolous and groundless action constituting a violation of C.R.S.1973 § 13–17–101.

Defendants move for summary judgment on the complaint for six reasons: (1) failure to state a claim; (2) the comments were not defamatory as a matter of law; (3) the comments were privileged under the constitutions of the United States and the State of Colorado; (4) the comments were abso-

---

1. Also spelled "Kruse."

lutely privileged; (5) the comments were consented to by plaintiffs; and (6) the comments were qualifiedly privileged. Plaintiffs have opposed the motion on each ground.

Summary judgment under Rule 56, F.R.Civ.P. is a drastic remedy that is appropriate only where there exists no genuine issue of material fact. *Jones v. Nelson,* 484 F.2d 1165, 1168 (10th Cir.1973); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157–159, 90 S.Ct. 1598, 1608–1609, 26 L.Ed.2d 142 (1970); *Luckett v. Bethlehem Steel Corp.,* 618 F.2d 1373, 1383 (10th Cir.1980). Under the rule, no margin exists for disposition of factual issues, and it may not serve as a substitute for trial of the case nor permit the parties to dispose of the litigation through affidavits. *Commercial Iron & Metal Co. v. Bache & Co.,* 478 F.2d 39, 41 (10th Cir.1973).

The Colorado courts have "frequently granted" summary judgments in defamation actions, *see, Manuel v. Fort Collins Newspapers, Inc.,* 42 Colo.App. 324, 599 P.2d 931, 934 (1979) rev'd on other grounds, 631 P.2d 1114 (1980), as have federal courts; *Bon Air Hotel, Inc. v. Time, Inc.,* 426 F.2d 858 (5th Cir.1970); *Washington Post v. Keogh,* 365 F.2d 965 (D.C.Cir.1967), *cert. denied,* 385 U.S. 1011, 87 S.Ct. 708, 17 L.Ed.2d 548 (1967). In *Manuel v. Fort Collins Newspapers, supra,* the court (quoting *Kidder v. Anderson,* 354 So.2d 1306 (La. 1978) said:

> [I]n order for plaintiff to be successful on the threshold issue of summary judgment, he must come forth with strong evidence, convincingly clear evidence, that the defendant knew the statements published were false or that he had reckless disregard of whether they were false or not. Otherwise, if plaintiff is allowed to escape summary judgment by simply a minimum showing he has thus effectively invoked the 'chilling effect of trial' doctrine.

In *DiLeo v. Koltnow,* 200 Colo. 119, 613 P.2d 318, 323 (1980) the Colorado Supreme Court said, "Were not summary judgment granted in proper cases the threat of protracted litigation might have a chilling effect upon the full and free exercise of the First Amendment sought to be protected by *New York Times v. Sullivan* and its progeny." This standard of proof is applicable in the instant action.

Defamation which is oral is slander and that which is written is libel. The elements of a cause of action for defamation (slander and libel) are: (1) a defamatory statement concerning another; (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff caused by the publication. *Restatement of the Law of Torts 2d,* section 558 (1979); *Williams v. Burns,* 540 F.Supp. 1243 (D.Colo.1982) (Kane, J.).

## FAILURE TO STATE A CLAIM

Defendants contend that plaintiffs' complaint is vague and ambiguous and fails to state a claim upon which relief can be granted. Plaintiffs' brief does not address this argument. Under the federal rules, a claim is not required to state all the elements of a particular cause of action, but plaintiff must at a minimum plead "a short and plain statement of the claim showing that the pleader is entitled to relief ..." Rule 8(a)(2), F.R.Civ.P. The first, second and third claims of plaintiffs' complaint meet the Rule 8 requirements, but the fourth claim is vague and fails to state a claim. Plaintiffs have not substantially set forth the words alleged to be defamatory and untrue nor any facts that would establish publication. The fourth claim for relief is dismissed for failure to state a claim.

## PUBLIC v. PRIVATE PLAINTIFFS

I am required initially to determine whether plaintiffs are public figures, public officials or private figures and whether the issues involved are matters of public or general concern. If plaintiffs are public figures, plaintiffs would be required to prove publication of defamatory falsehood

"with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan,* 376 U.S. 254, 280, 84 S.Ct. 710, 726, 11 L.Ed.2d 686, 95 A.L.R.2d 1412 (1964); *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). The Supreme Court has described two ways that one might become a public figure:

> For the most part those who attain this status have assumed roles of especial prominence in the affairs of society. Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes. More commonly, those classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved. In either event, they invite attention and comment.

*Gertz v. Welch, supra* at 345, 94 S.Ct. at 3009. *See also, DiLeo v. Koltnow,* 200 Colo. 119, 613 P.2d 318, 321 (1980). Plaintiffs maintain that they are not now and were not during the rezoning proceedings, public figures; defendants disagree arguing that as the proponents of the zoning change, plaintiffs invited public attention and comment. Plaintiffs contend that they may have invited public comment but did not invite "the Defendants to abuse them in print." (Brief in opposition, pg. 2).

Plaintiffs in this action, like the plaintiff in *DiLeo, supra,* are not public figures for all purposes because they do not occupy a position having "persuasive power and influence." The Colorado court reasoned in *DiLeo, supra* 613 P.2d at 322 that

> [i]n determining whether a person is a public figure in this [second] category, we must primarily focus on the 'nature and extent of an individual's participation in the particular controversy giving rise to the defamation.'

*Wolston v. Readers Digest Ass'n, Inc.,* 443 U.S. 157, 167, 99 S.Ct. 2701, 2707, 61 L.Ed.2d 450 (1979) citing *Gertz, supra,* 418 U.S. at 352, 94 S.Ct. at 3103, 41 L.Ed.2d at 812. See also, *Hutchinson v. Proxmire,* 443 U.S.

111, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979). I find that plaintiffs' participation in the rezoning proceeding was significant enough to qualify them as public figures. One does not become a public figure simply because the media's attention was attracted, *Id.; Wolston, supra; Time, Inc. v. Firestone,* 424 U.S. 448, 96 S.Ct. 958, 47 L.Ed.2d 154 (1976), but plaintiffs here "thrust themselves to the forefront of a particular public controversy to affect its resolution." *DiLeo, supra* 613 P.2d at 321.

## STATEMENTS NOT DEFAMATORY AS A MATTER OF LAW

Defendants argue that the statements made in the letters are not defamatory as a matter of law. The allegedly defamatory statement by defendant Linhof is found in the third paragraph of his November 9, 1981 letter to the El Paso County Land Use Department which defendants assert was written in response to the department's request for comment dated October 8, 1981. The third paragraph of Linhof's three page letter, attached in its entirety as an exhibit to defendants' Answer and Counterclaim, reads:

> This application for a massive re-zoning of what is mostly pristine grazing land calls into question the usefulness of the whole Land Use Planning apparatus. Is it of any use? Or is it sterile, merely based on noble sentiments, such as local citizens participation in guiding their future, and on golden words about appropriate use of the land? Can it stand the test? The test is whether a developer, even a land options speculator posing as a developer, in fact overrides the land use planning process and the citizens and their desires. Does the developer, or a purported developer, simply sweep it all aside when he spends enough money to put together a comprehensive brochure? The result is permanent, irreversible. Does the developer in reality govern the result?

The allegedly libelous statement in defendant Haymond's report to the Board of Directors of the Woodmoor Improvement Association sent to the El Paso Land Use

Commission together with his letter of November 9, 1981, (the total submission, also an exhibit to defendants' answer and counterclaim, is 11 pages in length) in its surrounding paragraph reads:

> Further, we have reason to urge that the County Commissioners examine thoroughly the financial capability and technical knowledge of this developer to finance this project and see it through to completion as proposed. His own resume shows that he has had no experience in developing and completing a project of this nature.

Plaintiffs' third claim concerns a letter to the editor by defendant Woodruff. After a recitation of concern for the community illustrated by her involvement in the rezoning proposal and her attendance at county meetings, Woodruff said:

> I was shocked to learn that many of the California towns where Walters claims to have had experience were very familiar to me. My thoughts wandered to overbuilt and crowded subdivisions, rundown and vacant shopping centers and industrial complexes which are real eye-sores.

In continuing, Woodruff questions the experience and qualifications of Walters and outlines research she has done in California to attempt to verify representations made in the Walters and Gary Construction resume. Again, the letter is lengthy containing many more paragraphs than the one quoted.

 Professor Prosser defines a defamatory communication as one which tends to hold the plaintiff up to hatred, contempt or ridicule, or to cause him to be shunned or avoided. Defamation tends to injure the reputation of the plaintiff and reflect upon his character. Prosser, *The Law of Torts,* § 111, page 739. The form of the statement is not important so long as the defamatory meaning is conveyed. Both an individual and a corporation or other business entity may be defamed. In order for the defendant's words to be defamatory, they must be understood under the circumstances. They are presumed to have the meaning ordinarily attached to them by those familiar with the language used. *Restatement of Torts,* § 563. A statement may be defamatory on its face or carry a defamatory meaning only by reason of extrinsic fact or circumstances by use of innuendo, inducement and colloquium.

 In viewing the three statements, I do not find them to be defamatory as a matter of law. Read as a whole and in their ordinary meaning, these statements do not hold the plaintiffs up to hatred, contempt or ridicule. Plaintiffs may not pull the statements out of context to conjure up a defamatory meaning as they have here attempted to do. The statements do not injure the reputation or character of the plaintiffs. I recognize that in the arena of politics these statements may contribute to a decision which is adverse to plaintiffs plans for the construction project, but economic advantage is not the legal equivalent of reputation. In fact, public hearings and free and open communication by citizens with public agencies and public officials give the First Amendment its *raison* d'etre. The motion for summary judgment is granted on this ground.

### THE COMMENTS WERE ABSOLUTELY PRIVILEGED

 Even if I were to determine that the statements are defamatory, I would find that the communications were absolutely privileged. It is a preliminary question of law for the court to determine whether the circumstances give rise to a privilege. *Costa v. Smith,* 43 Colo.App. 251, 601 P.2d 661, 662 (Colo.App.1979); *Abrahamsen v. Mountain States Telephone and Telegraph Co.,* 177 Colo. 422, 494 P.2d 1287 (1972). The defense of absolute privilege permits a defendant to escape liability for conduct that would otherwise be actionable because the defendant acted in furtherance of some interest of social importance which is entitled to protection even at the expense of uncompensated harm to the plaintiff's reputation. The interest may be one of the defendant himself, of a third person, or of the general public. *See,* Prosser, § 114, pp. 776–85; *Ling v. Whittemore,* 140 Colo. 247,

343 P.2d 1048 (1959). Proceedings for rezoning and development of a project the size of that proposed by plaintiffs fall within this "interest of social importance" category. Additionally, statements made during judicial proceedings are absolutely immune. Proceedings of boards and commissions that are judicial or quasi-judicial in nature are protected. *Prosser, Id.; McLarty v. Whiteford,* 30 Colo.App. 378, 496 P.2d 1071, 1072, *reh. den.;* 50 Am.Jur.2d Libel & Slander, § 231. To hold otherwise would "chill" First Amendment rights to express an opinion and publicly comment on judicial or quasi-judicial proceedings. Even if not absolutely privileged, the statements would most likely be qualifiedly or conditionally privileged under *Ling v. Whittemore, supra. See also, Restatement of the Law of Torts 2d,* section 594.

 Finally, consent is an absolute bar to recovery for defamatory statements. *Costa v. Smith, supra; Ling v. Whittemore, supra,* 343 P.2d at 1049. Plaintiffs do not deny that they were the proponents of the rezoning proceeding and admit that they may have invited public comment. Numerous hearings and meetings were held on the proposal and the proceedings were given substantial publicity from various sources. Even if these statements could be considered defamatory, they were made in response to requests by the board for comment and public participation. If plaintiffs did not expressly consent to public comment, such consent is constructive by virtue of their public application. Defendants' motion.for summary judgment on the basis of privilege is granted. It is therefore,

ORDERED that defendants motion for summary judgment is granted and judgment shall enter in favor of defendants and against plaintiffs. It is

FURTHER ORDERED that this civil action shall proceed to conclusion on defendants' six counterclaims. It is

FURTHER ORDERED that this civil action is referred to the United States Magistrate for the supervision of discovery and the preparation of a pre-trial order.