212 P.3d 85

**Tarun VIG, an unmarried man, Plaintiff/Appellant,**

v.

**NIX PROJECT II PARTNERSHIP, an Arizona general partnership, Defendant/Appellee**

**No. 1 CA–CV 08–0112.**

Court of Appeals of Arizona, Division 1, Department E.

March 5, 2009.

Lang & Baker, PLC By David R. Baker, Scottsdale, Attorneys for Plaintiff/Appellant.

Holden Willits Murphy, PLC By Michael J. Holden and R. Stewart Halstead, Phoenix, Attorneys for Defendant/Appellee.

## OPINION

SWANN, Judge.

¶ 1 This case requires us to determine whether the superior court properly granted summary judgment against a buyer pursuant to Arizona Revised Statutes ("A.R.S.") § 33–422 (Supp.2008).[1] Finding no error, we affirm.

¶ 2 We hold that an affidavit of disclosure is properly served pursuant to the statute when it is furnished to the buyer at least seven days before closing, regardless whether the buyer acknowledges receipt. We also hold that an affidavit of disclosure is substantively adequate pursuant to A.R.S. § 33–422(F) when the information provided places the buyer on inquiry notice of all relevant conditions within the scope of the statute. Finally, we hold that a buyer who takes an assignment of a contract from one who has not timely exercised the statutory right to rescind is bound by the inaction of his assignor and barred from invoking the right to rescind.

## I. FACTS AND PROCEDURAL HISTORY

¶ 3 Plaintiff–Appellant Tarun Vig ("Vig") is the buyer's nominee under a contract for sale of land. Vig's predecessor in interest under the contract is AA American Development Corporation ("American"), owned by Kuldip Verma ("Verma"). In 2005, American submitted an offer to NIX Project II Partnership ("NIX") for the purchase of a large undeveloped property located in unincorporated areas of La Paz and Maricopa Counties. The proposed contract was submitted through American's real estate agent, Jawaher Dodani ("Dodani"), to NIX's listing agent, John Hall & Associates ("Hall"). On or about June 1, 2005, NIX accepted the offer and a 30–day inspection period commenced.

¶ 4 NIX claimed that on June 7, 2005, Hall faxed to American's agent an affidavit of disclosure complying with the requirements of A.R.S. § 33–422. The fax was directed to, and received by, an individual named Kal, a

real estate agent handling the sale in the absence of Dodani. NIX further claimed that both Kal and Dodani orally acknowledged receipt of the disclosure and stated that they would obtain a signature from American. American neither sent the required acknowledgement nor exercised its right to rescind the contract.

¶ 5 On its affidavit of disclosure, NIX checked a box indicating without elaboration that there was no legal access to the property. Consistent with that disclosure, an escrow officer with the title company handling the transaction issued a title report with an effective date of June 16, 2005. This report listed as an exception to the proposed title insurance for the property "[t]he lack of a right of legal access recorded in insurable form to and from said land to a public street or road." According to her affidavit, the escrow officer also faxed a copy of the affidavit of disclosure to Verma and Dodani on July 21, 2005. Again, American neither sent acknowledgment nor attempted to rescind.

¶ 6 Escrow was originally scheduled to close on or before November 30, 2005. At American's request, NIX agreed to six extensions of the closing, with a substantial premium paid for each extension. On April 26, 2006, the parties agreed to a final addendum to the purchase contract that would allow escrow to close on May 1, 2006 (with a three-day grace period for the completion of any documents).

¶ 7 On April 27, 2006, American assigned its interest in the transaction to Vig, Verma's nephew. This assignment was allowed by the terms of the purchase contract. The escrow officer sent a copy of the affidavit of disclosure, which had not been signed by American, to Vig. Vig signed the disclosure, acknowledging his receipt, on May 1, 2006. On or about May 3, 2006, the escrow officer sent Vig an additional document, entitled "Access Amendment," which Vig also signed and returned. By doing so, Vig acknowledged that the title insurance policy to be issued would not insure against loss caused

---

1. We cite the current version of the statute because no revisions material to this opinion have occurred since the relevant period.

by the lack of a legal right of access to and from the property, and he released the seller from any loss or liability flowing from the lack of access.

¶ 8 Escrow closed on May 3, 2006. More than ten months later, on March 19, 2007, Vig filed this action against NIX, seeking remedies for breach of contract and statutory rescission on the basis that NIX's affidavit of disclosure did not comply with A.R.S. § 33–422. Vig moved for summary judgment, and NIX cross-moved for summary judgment, arguing, *inter alia*, that the undisputed facts showed that NIX had complied with the statute and that Vig had failed to exercise his right to rescind under the statute within the prescribed period.

¶ 9 The superior court denied Vig's motion and granted NIX's cross-motion for summary judgment. The court determined that the undisputed facts showed that the affidavit of disclosure had been provided to Vig's nominor in June 2005. The court further concluded that the affidavit of disclosure was adequate and NIX was not required to elaborate on its statement in paragraph 1 of the affidavit that there "is no legal access to the property, as defined in A.R.S. § 11–809." Vig timely appealed. We have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

## II. STANDARD OF REVIEW

¶ 10 We review de novo the grant of a motion for summary judgment. *Tierra Ranchos Homeowners Ass'n v. Kitchukov*, 216 Ariz. 195, 199, ¶ 15, 165 P.3d 173, 177 (App.2007). "In resolving the question as to whether summary judgment should be granted, the trial court does not weigh the evidence, nor do we; but the pleadings, affidavits, depositions and admissions, if any, must be viewed in the most favorable aspect they will bear in support of the right of the party opposing the motion to a trial of the issues." *Robbins Inv. Co. v. Green Rose Assocs., Inc.*, 8 Ariz.App. 596, 598, 448 P.2d 440, 442 (1968) (quoting *Peterson v. Valley Nat'l Bank of Phoenix*, 90 Ariz. 361, 363, 368 P.2d 317, 318 (1962)). We review the decision on the record made in the trial court, considering only the evidence presented to the trial court when it addressed the motion. *Phoenix*

*Baptist Hosp. & Med. Ctr., Inc. v. Aiken*, 179 Ariz. 289, 292, 877 P.2d 1345, 1348 (App. 1994); *GM Dev. Corp. v. Cmty. Am. Mortgage Corp.*, 165 Ariz. 1, 4, 795 P.2d 827, 830 (App.1990).

¶ 11 A party seeking summary judgment has the burden of demonstrating the absence of a genuine issue of material fact as to each element of its claim and each defense, though it need not present evidence disproving its adversary's defenses. *Nat'l Bank of Ariz. v. Thruston*, 218 Ariz. 112, 117, ¶ 22, 180 P.3d 977, 982 (App.2008). If the moving party meets its burden, the burden then shifts to the opposing party to produce sufficient competent evidence to show that there is an issue of material fact as to one or more elements of the claim or defense at issue. *Id.* at 119, ¶ 26, 180 P.3d at 984; *see* Ariz. R. Civ. P. 56(c)(1). Where there are no disputed facts, we independently review the trial court's application of law to those facts and are not bound by the trial court's legal conclusions. *Ariz. Joint Venture v. Ariz. Dep't of Revenue*, 205 Ariz. 50, 53, ¶ 14, 66 P.3d 771, 774 (App.2002). Interpretation of a statute is a question of law, and we owe no deference to a trial court's construction. *Turf Paradise, Inc. v. Maricopa County*, 179 Ariz. 337, 340, 878 P.2d 1375, 1378 (App. 1994).

## III. ANALYSIS

¶ 12 Arizona Revised Statutes § 33–422 provides, in pertinent part:

A. A seller of five or fewer parcels of land, other than subdivided land, in an unincorporated area of a county and any subsequent seller of such a parcel shall furnish a written affidavit of disclosure to the buyer, at least seven days before the transfer of the property, and the buyer shall acknowledge receipt of the affidavit.

. . .

D. The buyer has the right to rescind the sales transaction for a period of five days after the affidavit of disclosure is furnished to the buyer.

. . .

F. The affidavit of disclosure shall meet the requirements of § 11–480 and follow substantially the following form[.]

The statute includes a model form of affidavit that identifies the attributes of the subject property that must be addressed in an affidavit of disclosure. A.R.S. § 33–422(F). Twenty such attributes, including the legal and physical access to the property, the location of floodplains, and access to utilities, wastewater treatment, and water are addressed in the model form. *Id.*

¶ 13 The plain language of the statute reveals that its primary purpose is to protect buyers from unscrupulous sellers who might otherwise fail to disclose material defects in a property. The statute also serves to protect sellers from unscrupulous buyers who might seek to invalidate improvident property transactions through the use of specious claims that defects had been wrongly concealed.

¶ 14 In the instant case, it is undisputed that the statute applied to the transaction. As a seller of five or fewer parcels of unsubdivided land, in an unincorporated area of a county (here, two counties), NIX was required to furnish a timely and substantively sufficient written affidavit of disclosure to its buyer.

¶ 15 Three questions are presented in this appeal:

1. Is there a genuine issue of material fact as to whether NIX's affidavit of disclosure was timely furnished and received pursuant to A.R.S. § 33–422(A)?

2. Is there a genuine issue of material fact as to whether NIX's affidavit of disclosure was substantively adequate pursuant to A.R.S. § 33–422(F)?

3. Is there a genuine issue of material fact as to whether Vig's right to rescind the sales transaction pursuant to A.R.S. § 33–422(D) had expired by the time he sought to exercise it?

¶ 16 We find no genuine dispute of material fact as to these issues. NIX's affidavit of disclosure was both timely provided and substantively adequate, and Vig's right to rescind had expired by the time he sought to exercise it. NIX was therefore entitled to judgment as a matter of law.

*A. Timeliness of the Affidavit of Disclosure: A.R.S. § 33–422(A)*

¶ 17 The plain language of A.R.S. § 33–422(A) provides that the seller must furnish the buyer with the affidavit of disclosure at least seven days before the transfer of the property. This section of the statute also provides that the buyer shall acknowledge receipt of the affidavit. Section 33–422(F) provides a space for written acknowledgement at the end of the model form of affidavit. Vig contends that NIX did not furnish a compliant affidavit of disclosure until three days before the closing of escrow because American never signed the acknowledgement of receipt. Vig further contends that he did not, and could not, waive the seven-day requirement. We find, however, that Vig has failed to present evidence to generate a dispute of fact as to his contention that American did not receive the affidavit.

¶ 18 Arizona Rule of Civil Procedure 56(e) provides: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." NIX provided evidence showing that the affidavit of disclosure was faxed to Verma in July 2005. NIX provided the declaration of the escrow officer who sent the fax, as well as the escrow officer's copy of that fax. The copy shows that the fax was successfully transmitted to a fax number matching that to which the final addendum to the purchase contract was later sent and returned signed by Verma. The declaration also contains the escrow officer's testimony to the effect that Kal and Dodani orally confirmed receipt of the affidavit of disclosure.

¶ 19 For his part, Vig presented his own affidavit, in which he testified: "Neither Verma nor Vig have at any time prior to May 1, 2006 received an Affidavit of Disclosure from Seller, nor have Kal or Dodani ever informed Verma or Vig of such an Affidavit, nor have Kal or Dodani ever acknowledged in writing

receipt of such Affidavit." Vig never submitted any sworn statement by Verma, Kal or Dodani. The evidence he did submit is insufficient to raise a genuine dispute of fact, and it illustrates both the importance and purpose of Rule 56(e). Vig was not part of the transaction until April 27, 2006. He does not suggest that he would have been in a position to receive an affidavit of disclosure before that date. Nor does he suggest any basis upon which he might have personal knowledge of Verma's receipt (or lack of receipt) of the affidavit in 2005. Vig's statements concerning Verma, and his statements concerning Kal and Dodani's communications with Verma, are therefore either speculation or hearsay. In neither case would they be admissible, and Rule 56(e) precluded the superior court from ascribing any evidentiary value to those statements.

■ ¶ 20 Absent any evidence to generate a dispute of fact, the superior court was correct in concluding as a matter of law that American received the affidavit of disclosure in 2005 and failed to exercise its right of rescission. In these circumstances, we ascribe no legal significance to Verma's failure to sign and return the acknowledgement of receipt. The statute provides no express consequence for the failure of a buyer to formally acknowledge receipt. An interpretation of the statute that would entitle a buyer to extend his time for rescission by simply failing to communicate would amplify the very uncertainty that the legislature sought to eliminate.

### B. Sufficiency of the Affidavit of Disclosure: A.R.S. § 33–422(F)

¶ 21 Section 33–422(F) prescribes the substantive contents of an affidavit of disclosure. First, an affidavit of disclosure must meet the requirements of A.R.S. § 11–480 (Supp. 2008), which defines the form of instruments that are to be presented to a county recorder for recordation. Second, A.R.S. § 33–422(F) requires that the affidavit of disclosure follow "substantially" the model form provided in the statute. The statute does *not* require that the *exact* model form be used. Rather, any form that addresses the attributes of the land described in the statute and that complies with A.R.S. § 11–480 is adequate. Here, NIX used the model form to describe the relevant attributes of the land in question, altered only to fit on standard sheets of paper. We conclude that NIX's form complies with the statute.

■ ¶ 22 Vig contends that NIX inadequately answered the first question on the affidavit of disclosure, which reads as follows:

There ☐ is ☐ is not .... legal access to the property as defined in A.R.S. § 11–809 .... ☐ unknown

Explain: ─────────────────────

"Legal access" is defined in A.R.S. § 11–809(G)(1) (Supp.2008) as "a public right of vehicular ingress and egress between the lots, parcels or fractional interests being created." In completing the form, NIX simply marked the box indicating that there "is not" legal access to the property and provided no further explanation. Vig argues that because the form leaves a blank for an explanation and no explanation was provided, the affidavit of disclosure did not sufficiently comply with the statute. We disagree.

■ ¶ 23 The statute does not provide that explanations must be written for *all* answers to the questions on the form merely because there is space to do so. An answer that is self-explanatory does not require further elaboration to serve the purpose of the statute. Here, NIX's answer that there "is not" legal access to the property is self-explanatory. This is not a case in which the disclosure was in any way misleading or shaded to sugar-coat a problem with the property. Nor is this a case in which there was imperfect legal access and an explanation to the checked answer would have made the disclosure more accurate. Once the defect was disclosed, no further explanation was needed to provide American with notice of the defect and the opportunity to inquire further or rescind. We hold that so long as a disclosure places the buyer on inquiry notice that is neither incomplete nor misleading, it complies with A.R.S. § 33–422.

## C. Right to Rescind: A.R.S. § 33–422(D)

¶ 24 Vig contends that he was independently entitled as the new nominee under the contract to receive an affidavit of disclosure at least seven days before closing. We reject his argument.

¶ 25 "An assignee steps into the shoes of her assignor. She 'can stand in no better position than the assignor' and '[a]n assignment cannot alter the defenses or equities of the third party.'" *K.B. v. State Farm Fire & Cas. Co.*, 189 Ariz. 263, 267, 941 P.2d 1288, 1292 (App.1997) (quoting *Stephens v. Textron, Inc.*, 127 Ariz. 227, 230, 619 P.2d 736, 739 (1980)). The assignment was a private matter between the assignor and assignee—it was not the seller's responsibility to inject itself into that bargain by affirmatively ensuring that Vig had been provided with complete disclosures. Here, American had already waived its statutory rescission right when it failed to rescind within five days after receiving the affidavit of disclosure. The rights and obligations to which Vig succeeded were not enlarged either by the express terms of the statute or by the fact of the last-minute assignment. The contract that he assumed came with a rescission right that had already been waived. The burden of ensuring Vig's knowledge of that fact did not belong to NIX.

¶ 26 It also merits note that Vig became American's nominee on April 27, 2006—fewer than seven days before the scheduled closing. Were we to hold that a new disclosure period commenced upon assignment of a buyer's interest, we would do little more than encourage last-minute gamesmanship aimed at delaying or derailing the performance of valid contracts. For these reasons, we conclude that Vig was bound by American's waiver of its rights, and affirm the entry of summary judgment in NIX's favor.

### D. Attorneys' Fees

¶ 27 Both parties request attorneys' fees on appeal. We may award reasonable attorneys' fees to the successful party in an action arising out of contract. A.R.S. § 12–341.01(A) (2003). As this dispute arises out of contract, we award NIX its reasonable attorneys' fees upon its compliance with AR-CAP 21(c).

## IV. CONCLUSION

¶ 28 For the foregoing reasons, we hold that an affidavit of disclosure is properly served pursuant to A.R.S. § 33–422 when it is furnished to the buyer at least seven days before closing, regardless whether the buyer acknowledges receipt. We also hold that an affidavit of disclosure is substantively adequate when it places the buyer on inquiry notice of all relevant conditions within the scope of the statute. We finally hold that a buyer who is assigned a contract from one who has not timely exercised his statutory right to rescind is bound by the inaction of his assignor and barred from invoking the right to rescind. We affirm the superior court's grant of summary judgment against the buyer in the instant case.

CONCURRING: DONN KESSLER, Acting Presiding Judge and JOHN C. GEMMILL, Judge.